**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-01013-CMA-KLM

SURENDRA KUMAR AJJARAPU, and
SANDHYA AJJARAPU,

      Plaintiffs,

v.

AE BIOFUELS, INC.,
CORPORATE STOCK TRANSFER, INC., and
CRONE ROZYNKO, LLP,

      Defendants.

---

## ORDER REGARDING MOTIONS TO DISMISS

---

This is a tort and securities fraud case brought by Plaintiffs Surendra Kumar and

Sandhya Ajjarapu against A.E. Biofuels, Inc. ("AE"), Corporate Stock Transfer ("CST"),

and Crone Rozynko, LLP ("Crone").[1]  These matters are before the Court on Defendant

AE's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 59) and Defendant

Crone's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (Doc. # 84).

---

[1] CST commenced this case by filing an interpleader complaint asking for the Court's assistance in resolving the dispute between Plaintiffs and AE.  (Doc. # 1.)  The current posture is a result of Magistrate Judge Tafoya's Order allowing Plaintiff's Motion for Leave to File Amended and Restated Complaint.  (Doc. # 47.)

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.[2]  These matters are fully briefed and ripe for review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2007, American Ethanol, Inc. merged with Marwich II, Ltd. through what is known as a reverse-merger and became AE.  (Doc. # 35, ¶¶ 11; 16.)  According to 17 C.F.R. § 230.144 ("Rule 144")[3] and the Schedule 14C AE filed with the SEC, new shares of AE were required to contain a restrictive legend preventing transfer of the shares until after the expiration of a one-year holding period.  (*Id.,* ¶ 14.)  As a result, AE's new shares would contain a restrictive legend preventing sale until removal of the restriction after the one-year holding period expired.  (*Id.*)  The parties' varying interpretations of Rule 144 form the basis of this lawsuit.

Upon conclusion of the merger in late 2007, AE employed Plaintiff Surendra Kumar Ajjarapu as its president.  (*Id.,* ¶ 17.)  At this time, Mr. Ajjarapu owned 9.6% of AE's stock.  (*Id.,* ¶ 19.)  On October 16, 2008, Mr. Ajjarapu resigned as president, and it appears that he wanted to sell the shares he and his wife, Plaintiff Sandhya Ajjarapu, owned.[4]  (*Id.,* ¶¶ 20; 28.)  He instructed his brokerage firm to ask CST, AE's stock

---

[2]  Jurisdiction over Plaintiffs' securities fraud claim is also proper pursuant to 28 U.S.C. § 1331.

[3]  Rule 144 is an exemption for the sale of restrictive securities that were issued with a restrictive legend.  17 C.F.R. § 230.144 (2010).  It provides sellers a safe harbor for selling shares that were originally issued with a restrictive legend, provided certain conditions are met.  *Id.*

[4]  Plaintiffs never explicitly state that they wanted to sell their shares, although their actions, described below, imply that they did.

transfer agent, whether Plaintiffs' AE shares could be reissued without a restrictive legend under Rule 144. (*Id.,* ¶¶ 31; 29.) CST responded to the brokerage firm and indicated that the shares would not be available without a restrictive legend preventing sale for another five months because of the one-year holding period required by Rule 144. (*Id.*)

Mr. Ajjarapu asserts that CST nonetheless issued shares without a restrictive legend to other shareholders based on legal opinions AE's counsel, Crone, issued in December 2008 and March 2009 opining that other shareholders could receive their shares without restrictive legend pursuant to Rule 144. (*Id.,* ¶¶ 30; 47; 49-50.) Mr. Ajjarapu further contends that in order to thwart Plaintiffs' attempts to sell their shares, on March 30, 2009, AE instructed Crone to send an e-mail directing CST not to remove any more restrictive legends on allegedly "bogus grounds" that AE was not going to be current in their SEC filings. (*Id.,* ¶ 52; Doc. # 85-1 at 2.) Mr. Ajjarapu contacted his private securities' attorney, who informed him in an opinion dated March 31, 2009 that some of his shares should be able to be issued without a restrictive legend pursuant to Rule 144. (*Id.,* ¶ 30.) Mr. Ajjarapu then provided this opinion to CST, which nevertheless continued to refuse to reissue Plaintiffs' shares without a restrictive legend. (*Id.,* ¶ 31.)

On May 5, 2009, CST commenced this case by filing an interpleader complaint asking for the Court's assistance in resolving the dispute between Plaintiffs and AE. (Doc. # 1.) On July 1, Plaintiffs filed their Answer, counterclaimed against CST, and

crossclaimed against AE.  (Doc. # 10.)  Plaintiffs sought a declaratory judgment against CST declaring that CST violated its duty under Rule 144.  (*Id.* at 18.)  They also brought claims against AE for breach of fiduciary duty, conversion, and securities fraud, seeking damages and injunctive relief.  (*Id.*)

As a result of this interpleader complaint, AE's new counsel Burns, Figa & Will, P.C. communicated to Plaintiffs its interpretation of Rule 144, with which Plaintiffs disagree.  (Doc. # 35, ¶¶ 34-38.)  Finally, on July 9, 2009, CST offered to have Plaintiffs' shares reissued without the restrictive legend, so long as Plaintiffs sent CST a representation that they had a bona fide intention to sell.  (*Id.,* ¶ 39.)  On July 27, AE agreed to this arrangement.  (*Id.,* ¶ 40.)  Plaintiffs consented, despite not believing that they needed an intention to sell to receive their shares without a restrictive legend. (*Id.* ¶ 40 n.10.)

On September 5, Plaintiffs filed an Amended and Restated Complaint, which realigned the parties to make themselves Plaintiffs and make CST and AE Defendants; added Crone as a Defendant; and asserted: (1) a securities fraud claim under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10B-5 ("Rule 10b-5") against all three Defendants; (2) a claim under section 104.8401 of the Nevada Revised Statutes[5] against AE and CST; (3) a claim for breach of fiduciary duty against AE; and (4) a claim for conversion

---

[5]  This is Nevada's codification of U.C.C. § 8-401.  It is codified in Colorado as Colo. Rev. Stat. § 4-8-401.

against AE.  (Doc. # 35, ¶ 54-75.)  Plaintiffs seek injunctive relief against AE and damages against all Defendants.  (*Id.,* ¶ 76-77; *Id.* at 25-26.)

On October 27, 2009, AE filed a Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. # 59.)  AE argues that: (1) Plaintiffs' common law tort claims, *i.e.*, their breach of fiduciary duty and conversion claims, are preempted by the Uniform Commercial Code ("UCC"); (2) Plaintiffs fail to state a claim for securities fraud; (3) Plaintiffs fail to state a claim under the UCC; and (4) Plaintiffs fail to plead the elements required for injunctive relief.  (Doc. # 59 at 4-9.)  On November 9, Plaintiffs responded (Doc. # 73), and on November 24, AE replied (Doc. # 78).

Likewise, on December 30, 2009, Crone filed a Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6).  (Doc. # 84.)  Crone argues that: (1) this Court lacks personal jurisdiction over it, and (2) Plaintiffs fail to state a securities fraud claim against it.  (Doc. # 84 at 3-6.)  On January 11, 2010, Plaintiffs responded (Doc. # 85), and on January 29, Crone replied (Doc. # 90).  Discovery between Crone and any party is stayed pending this Court's ruling on Crone's Motion to Dismiss.  (Doc. # 99.)

## II.  DISCUSSION

### A.    CRONE'S MOTION TO DISMISS

Defendant Crone moved to dismiss on Rule 12(b)(2) and (6) grounds.  (Doc. # 84.)  Because the Court must have jurisdiction in order to render a valid judgment, the Court must consider Crone's personal jurisdiction argument before reaching the merits

of the case against Crone.  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998).  Thus, the Court will address Crone's Rule 12(b)(2) argument first.  Because the Court concludes it does not have personal jurisdiction over Crone, it need not address Crone's 12(b)(6) argument.

1.    Standard of Review – Rule 12(b)(2) Motion

Plaintiffs have the burden to establish the Court's personal jurisdiction over Crone.  *Dudnikov v. Chalker & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008).

> Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008) (citations and internal quotation marks omitted).[6]

In resolving a Rule 12(b)(2) motion, the Court accepts as true all well-pleaded, *i.e.*, non-conclusory and non-speculative, facts alleged in Plaintiffs' Complaint. *Dudnikov*, 514 F.3d at 1070 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Any factual conflicts must be resolved in Plaintiffs' favor, and Plaintiffs' prima facie showing is sufficient notwithstanding the contrary presentation by the moving

---

[6]  If the Court were to hold an evidentiary hearing to determine personal jurisdiction, then the Plaintiffs would have to establish that personal jurisdiction exists over Defendant Crone by a preponderance of the evidence.  *Dudnikov*, 514 F.3d at 1070 n.4.

party.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  If Plaintiffs satisfy

their prima facie burden, Crone "must present a compelling case demonstrating 'that the

presence of some other considerations would render jurisdiction unreasonable.'"  *OMI*

*Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewica*, 471 U.S. 462,

477 (1985)).

      2.    <u>Analysis</u>

To obtain personal jurisdiction over a nonresident defendant, a plaintiff must

demonstrate that (1) jurisdiction is legitimate under the laws of forum state, and (2) the

exercise of jurisdiction comports with the Due Process Clause.  *Dudnikov*, 514 F.3d at

1070 (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  "Colorado's

long arm statute . . . confers the maximum jurisdiction permissible consistent with the

Due Process Clause."  *Id.* (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187,

1193 (Colo. 2005).  Therefore, the two-pronged inquiry collapses into one in Colorado.

*Id.*  The Court asks only whether the exercise of personal jurisdiction over Defendant

Crone comports with due process.

This is a two-step inquiry.  At step one, the Court examines "whether the non-

resident defendant has 'minimum contacts' with the forum state such that he should

reasonably anticipate being haled into court there."  *Melea, Ltd. v. Jawer SA*, 511 F.3d

1060, 1065 (10th Cir. 2007) (quoting *TH Agric. & Nutrition, LLC v. Ace European Group*

*Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007)).  If the Court finds that Defendant has

sufficient minimum contacts with Colorado, the Court must then determine "whether the

court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances." *Id.* at 1066 (quoting *TH Agric.*, 488 F.3d at 1287).

The minimum contacts test may be met by a showing of specific jurisdiction, *i.e.*, showing that the controversy arises out of the defendant's contacts with the forum state, or general jurisdiction, *i.e.*, showing that the defendant has general business contacts with the forum state. *OMI Holdings*, 149 F.3d at 1090-91. Because Plaintiffs assert that the Court can exercise both specific and general jurisdiction in this case, the Court will address each of their arguments in turn.

(i.)  Specific Jurisdiction

The Court may exercise specific jurisdiction only if: (1) "the defendant has purposefully directed its activities toward the forum jurisdiction" and (2) "the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). The first prong of the specific jurisdiction test ensures that defendants will not be "subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *AST Sport Sci., Inc. v. CLF Distrib., Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008). The Court must analyze the "quantity **and** quality" of Defendant Crone's contacts with Colorado. *OMI Holdings*, 149 F.3d at 1092 (emphasis in original). The second prong of the

specific jurisdiction test asks whether a "nexus" exists between Crone's Colorado contacts and Plaintiffs' causes of action.  *Id.* at 1095.

With respect to the first prong, Plaintiffs assert that there are four contacts between Crone and Colorado demonstrating that Crone purposefully directed its activities at Colorado: (1) "AE clandestinely and secretly instructed CST, its duly authorized stock transfer agent, through Crone" to prohibit Plaintiffs from receiving their shares without restrictive legends (Doc. # 35, ¶ 31); (2) Crone's December 2008 legal opinion (*id.,* ¶ 50); (3) Crone's March 2009 legal opinion (*id.*); and (4) The e-mail sent by Stacie Banks, a paralegal for Crone, to CST instructing CST not to permit the legend removal.  (*Id.,* ¶ 52.)

The first three contacts do not demonstrate that Crone purposely directed its activities at Colorado.  Plaintiffs state that Crone delivered legal opinions, but they do not specify to whom Crone delivered its opinions.  (*Id.,* ¶ 50.)  Plaintiffs do not allege that Crone provided these opinions directly to CST in Colorado.  Based on the evidence submitted by affidavit, it appears that Crone represented AE, not CST.  (Doc. # 85 at 1; Doc. # 35, ¶ 51.)  Thus, the Court assumes that Crone provided its legal opinions to AE, which then provided them to CST.  The Court cannot assert personal jurisdiction over Crone through the unilateral actions of a third-party (here, AE providing Crone's legal opinions to CST in Colorado); the Court may only assert personal jurisdiction over Crone if **Crone** purposefully directed its activities at Colorado.  *See AST Sport Sci., Inc. v. CLF Distrib., Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).  Thus, the fact that Crone's

legal opinions somehow found their way to Colorado does not mean that Crone purposefully directed its activities at Colorado. Moreover, stating that AE instructed CST through Crone does not mean that Crone actually contacted CST in Colorado. This statement also does not specify that Crone purposefully directed its activities at CST in Colorado. As such, the Court finds that these contacts do not demonstrate that Crone purposely directed its activities at Colorado. *Kuenzle*, 102 F.3d at 456.

The remaining contact is the e-mail Crone sent to CST. One e-mail is not enough to confer this Court with personal jurisdiction over Crone. Crone did not initiate the e-mail conversation; Crone responded to an inquiry from a CST employee. Thus, CST's, not Crone's, actions are the only reason Crone came into contact with Colorado. One e-mail with three short sentences is not enough for a corporation to anticipate being haled into to court unless the corporation has more substantial contacts with the state. *Cf. Nat'l Bus. Brokers v. Jim Williamson Prods.*, 16 F. App'x 959, 962-63 (10th Cir. 2001) (unpublished) (holding that sixty e-mail, telephone, and facsimile communications a party sent to the forum jurisdiction were not enough for the court to establish personal jurisdiction over that party). Plaintiffs must demonstrate that Crone did something more than send one e-mail to CST. They have not. The Court finds that Plaintiffs have failed to satisfy their prima facie burden of demonstrating that Crone purposely directed its activities at Colorado.

Because the Court finds that Crone did not purposefully direct its activities at Colorado, it need not consider the second prong of the specific jurisdiction test, *i.e.*,

whether Plaintiffs' injuries arise out of Crone's contacts with Colorado. *Kuenzle*, 102 F.3d at 456. Plaintiffs did not satisfy the first prong of the specific jurisdiction test; therefore, the Court holds that it cannot assert specific jurisdiction over Crone. The Court will now turn to Plaintiffs' argument that the Court can assert general jurisdiction over Crone.

(ii.) General Jurisdiction

Even though the Court does not have specific jurisdiction over Crone, it may still satisfy the minimum contacts test if it finds that it may assert general jurisdiction over Crone. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007). General jurisdiction over a defendant exists if the defendant has "'continuous and systematic general business contacts' with the forum state." *Melea*, 511 F.3d at 1066 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Crone asserts in an affidavit that it has no offices, clients, or business in Colorado, and these facts are uncontroverted by Plaintiffs. (Doc. # 85 at 1.) Thus, Crone does not have continuous or systematic business contacts with Colorado.

Because Plaintiffs have not demonstrated that Crone has sufficient minimum contacts with Colorado, the Court need not consider the second step of the due process test for personal jurisdiction, *i.e.*, whether exercising personal jurisdiction over Crone is reasonable. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can*, 149 F.3d 1086, 1091 (10th Cir. 1998) (stating that "if the defendant's actions create sufficient minimum contacts, [the Court] must then consider" the second step of the due process test for

personal jurisdiction).  Thus, the Court holds that Plaintiffs have failed to satisfy their prima facie burden of showing that the Court may assert personal jurisdiction over Crone.

Because the Court concludes that it does not have personal jurisdiction over Crone, it need not address whether Plaintiffs' Rule 10b-5 claim against Crone fails under Rule 12(b)(6).  The Court will now consider AE's outstanding Motion to Dismiss. (Doc. # 59.)

## B.    AE'S MOTION TO DISMISS

AE asserts four grounds for dismissal: (1) section 4-8-401 of the Colorado Revised Statutes preempts Plaintiffs' common law tort claims for conversion and breach of fiduciary duty; (2) Plaintiffs fail to state a claim under section 4-8-401 of the Colorado Revised Statutes; (3) Plaintiffs fail to state a securities fraud claim; and (4) Plaintiffs fail to plead the elements for injunctive relief.  (Doc. # 59 at 4-9.)

### 1.    <u>UCC Displacing Common Law Claims</u>

Defendant AE's first argument for dismissal is that U.C.C. § 8-401, adopted in Colorado as section 4-8-401 of the Colorado Revised Statutes, displaces Plaintiffs' common law tort claims for conversion and breach of fiduciary duty.  (Doc. # 59 at 4-5.) Plaintiffs argue that Nevada law, not Colorado law, is controlling and, in Nevada, the UCC does not displace their common law tort claims.[7]  (Doc. # 73 at 11.)  The Court,

---

[7] Although Plaintiffs do not cite to any authority for this argument, the Court will nevertheless address their argument.  (*See* Doc. # 73 at 11.)

therefore, must first decide which state's law to apply and then decide whether the UCC

displaces Plaintiffs' common law tort claims under that state's law.

In a diversity action, "the federal courts are obliged to apply the conflict of laws

rules of the forum state." *TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1490 (10th

Cir. 1995) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Because this Court has jurisdiction over these claims through 28 U.S.C. § 1332, it must

apply Colorado law, which follows section 145 of the Restatement (Second) of Conflict

of Laws to apply the most significant relationship to the occurrence and parties test.[8]

*AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007).

In the instant case, Colorado, not Nevada, law governs for a variety of reasons.

Colorado has a stronger relationship to this case than Nevada. The only connection

---

[8] The at issue section of the Restatement (Second) of Conflict of Laws provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and parties under the principles stated in § 6.

(2) Contacts to be taken in account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

that Nevada has to this lawsuit is that AE is incorporated there.  (Doc. # 35, ¶ 9.)

However, their offices are in California and there is no allegation that AE does any

business in Nevada.  (*Id.*)  CST, a Colorado corporation, was responsible for removing

the restrictive legend on the Plaintiffs' stock certificates.  (*Id.,* ¶ 46.)  Plaintiffs attempted

to get CST to remove the restrictive legend, and CST's failure to comply with Plaintiffs'

request is why Plaintiffs allegedly suffered damages.  (*Id.,* ¶ 47.)  Thus, the conduct that

caused the injury occurred in Colorado.  Colorado is also the place where the

relationship between Plaintiffs, AE, and CST is centered.  Both Plaintiffs and AE

communicated with CST about whether CST could remove the restrictive legend.  (*Id.*,

¶¶ 29; 31.)  Because Colorado has the most significant relationship to Plaintiffs' state

law claims, *i.e.*, their UCC, conversion, and breach of fiduciary duty claims, the Court

finds that Colorado law applies to these claims.

Therefore, the Court must look to Colorado law to see if Colorado's codification

of the UCC displaces common law claims.  In Colorado, the UCC displaces common

law remedies if the UCC and the common law would provide "a means of recovery for

the same loss."  *Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo. 2008).

Section 4-8-401 of the Colorado Revised Statutes allows the issuer of stock to be held

liable for any loss resulting from the issuers: (1) refusal to register the transfer,

(2) failure to register the transfer, or (3) unreasonably delaying the registration of the

transfer.  A claim under section 4-8-401 "displaces common law remedies for that same

loss."  *Id.* at 1239.  Following the Colorado Supreme Court's holding in *Clancy*, the

Court finds that section 4-8-401 displaces Plaintiffs' common law tort claims of conversion and breach of fiduciary duty. The Court will thus dismiss both of those claims.

2. UCC Claim Against AE

AE's second argument for dismissal is that Plaintiffs fail to state a claim under section 4-8-401 of the Colorado Revised Statutes because Plaintiffs did not allege that AE had a duty to register the transfer and Plaintiffs' complaint does not give them fair notice of a UCC claim. (Doc. # 59 at 7-8.)

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "'accept[s] all the well-pleaded allegations of the complaint as true'" and "'construe[s] them in the light most favorable to the plaintiff.'" *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *The Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citation and quotation marks omitted).

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments. *S. Disposal, Inc., v. Tex.*

*Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

As stated above, section 4-8-401 of the Colorado Revised Statutes provides a cause of action against issuers of securities if the issuer is under a duty to register the transfer. It provides:

> (a) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:
>
>> (1) Under the terms of the security the person seeking registration is eligible to have the security registered in its name;
>>
>> (2) The indorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;
>>
>> (3) Reasonable assurance is given that the indorsement or instruction is genuine and authorized (section 4-8-402);
>>
>> (4) Any applicable law relating to the collection of taxes has been complied with;
>>
>> (5) The transfer does not violate any restriction on transfer imposed by the issuer in accordance with section 4-8-204;
>>
>> (6) A demand that the issuer not register transfer has not become effective under section 4-8-403, or the issuer has complied with section 4-8-403(b) but no legal process or indemnity bond is obtained as provided in section 4-8-403(d); and
>>
>> (7) The transfer is in fact rightful or is to a protected purchaser.

(b)  If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

Colo. Rev. Stat. § 4-8-401 (2009).  An issuer is under a duty to register a transfer of a security if the seven elements of section (a) are met.  *See* Colo. Rev. Stat. § 4-8-401 cmt. 1 (2009); *Am. Sec. Transfer, Inc. v. Pantheon Indus.*, 871 F. Supp. 400, 403 (D. Colo. 1994); 17 Richard A. Lord, *Williston on Contracts* § 51:60 (4th ed. 2010). In order to establish that the issuer had a duty to register the transfer, a plaintiff suing under this provision must plead all seven elements of section (a).

AE asserts that Plaintiffs have not pleaded that AE had a duty to register the transfer.  (Doc. # 59 at 8.)  However, a careful reading of the Amended and Restated Complaint reveals that Plaintiffs have pleaded all seven elements of a claim under section 4-8-401 of the Colorado Revised Statues.  (Doc. # 35, ¶¶ 56-61.)   For element one, Plaintiffs pleaded that they "were eligible to have their AE [s]hares re-registered in their names."  (*Id.,* ¶ 57.)  Furthermore, as to elements two and three, Plaintiffs state that their brokerage firm, which made the instruction, was an agent authorized to act on their behalf; this also means that CST had reasonable assurance that the instruction is genuine and authorized.  (*Id.,* ¶¶ 29; 58.)   As to elements four and five of section 4-8-401, Plaintiffs state that "all applicable laws relating to the collection of taxes have been complied with" and that reissuing the shares "would not have violated any restriction on transfer."  (*Id.* ¶ 60.)  Plaintiffs also pleaded element six, as they state that "no demand

. . . had been made that AE not re-issue" Plaintiffs' shares.  (*Id.,* ¶ 61.)  Finally, as to element seven, Plaintiffs believe the transfer is rightful because they are the owners and because Rule 144 allows transfer.  (*Id.,* ¶¶ 55; 30.)  Moreover, Plaintiffs state that CST was under a duty to transfer shares as AE's transfer agent and, under section 4-8-407 of the Colorado Revised Statutes, the duties of an issuer and its transfer agent to register a transfer are coextensive, *i.e.*, their duties are identical.  Therefore, the Court holds that Plaintiffs' allegations are sufficient to establish a claim against AE under section 4-8-401 of the Colorado Revised Statutes.

AE further asserts that Plaintiffs' pleadings do not give AE fair notice of a claim under section 4-8-401 of the Colorado Revised Statutes.  (Doc. # 78 at 11.)  As stated above, however, Plaintiffs have pleaded all seven elements of this claim.  Moreover, Plaintiffs' claims all arise from their allegation that AE and CST were under a duty to reissue Plaintiffs' AE shares without a restrictive legend pursuant to Rule 144.  AE's and CST's failure to do so gives rise to a cognizable claim under section 4-8-401.  *See Am. Sec. Transfer, Inc. v. Pantheon Indus.*, 871 F. Supp. 400, 404-05 (D. Colo. 1994).  Although Plaintiffs' pleadings may not be not models of clarity, the Court holds that Plaintiffs have provided AE fair notice of a claim under section 4-8-401.

3. <u>Securities Fraud Claim</u>

AE's third argument for dismissal is that Plaintiffs failed to plead all the required

elements of a securities fraud claim under 15 U.S.C. § 78j(b)[9] and Rule 10b-5. (Doc.

# 59 at 6-7.) In order to state a Rule 10b-5[10] claim for securities fraud, a plaintiff must

plead that:

> (1) the defendant made an untrue or misleading statement of material
> fact, or failed to state a material fact necessary to make statements not
> misleading; (2) the statement complained of was made in connection with
> the purchase or sale of securities; (3) the defendant acted with *scienter*,
> that is, with the intent to defraud or recklessness; (4) the plaintiff relied
> on the misleading statements; and (5) the plaintiff suffered damages as
> a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

---

[9] 15 U.S.C. § 78j(b) is the statutory equivalent of Rule 10b-5, and because 15 U.S.C.
§ 78j(b) and Rule 10b-5 are coextensive, the Court only refers to Rule 10b-5 in this order. *SEC
v. Wolfson*, 539 F.3d 1249, 1256 n.11 (10th Cir. 2008).

[10] Rule 10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means
or instrumentality of interstate commerce, or of the mails or of any facility of any
national security exchange,

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of material fact or omit to state a
> material fact necessary in order to make the statements made, in light
> of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates
> or would operate as a fraud or deceit on any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2010).

A Plaintiff suing under Rule 10b-5 must comply with the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.).  Rule 9(b) mandates that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, where, and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, and the identity of the party making the false statements."  *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation marks and citations omitted).

The PSLRA similarly requires that "the complaint" in a securities fraud action under Rule 10b-5 "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is made."  15 U.S.C. § 78u-4(b)(1).  When alleging that a defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Thus, a plaintiff suing under Rule 10b-5 must plead with particularity the defendant's fraudulent acts and the defendant's state of mind. *See Adams v. Kinder-Morgan*, 340 F.3d 1083, 1095-96 (10th Cir. 2003).

AE argues that Plaintiffs' Complaint does not adequately plead the first four elements of a Rule 10b-5 claim. (Doc. # 59 at 6.) However, by conceding that Plaintiffs have adequately pleaded the fifth element of a Rule 10b-5 claim, AE has conceded that Plaintiffs have adequately pleaded the fourth element because reliance is a prerequisite to the fifth element.[11] Therefore, the Court need only address whether Plaintiffs have adequately pleaded the first three elements of a Rule 10b-5 violation. The Court will address each element in turn.

(i.) Pleading the Misleading Statements With Specificity

The first element a plaintiff must plead in order to state a valid Rule 10b-5 securities fraud claim is that the defendant made a misleading statement of material fact. *Adams*, 340 F.3d at 1095. A plaintiff must plead with specificity "each statement alleged to have been misleading [and] the . . . reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). "A common-sense, case-by-case approach will edify any determination of whether the facts alleged are sufficient under this standard, requiring courts to determine whether, taken as a whole, the facts alleged support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Corporate Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1066 (D. Colo. 2009) (internal quotations and citations omitted). The Court will first

---

[11] The Court also notes that Plaintiffs have stated that they relied upon AE's misleading statements. (Doc. # 35, ¶ 28.)

consider the allegedly misleading statements AE made and then consider whether Plaintiffs have stated why each of these statements are misleading.

Plaintiffs alleged that AE made three misleading statements[12]: (1) instructing CST to tell Plaintiffs' brokerage firm that Plaintiffs would not be able to use Rule 144 to sell their shares, which Plaintiffs plead on belief (Doc. # 35, ¶ 29); (2) "clandestinely and secretly instruct[ing] CST . . . not to permit re-issuance of the Shares without legend on grounds that 'AE was going to be late in filings its Form 10-K' with the SEC" (*id.,* ¶ 31); and (3) a letter from AE's in-house counsel indicating that the Plaintiffs needed to meet certain conditions before AE would agree to let CST reissue the stock certificates without a restrictive legend. (*Id.*, ¶ 40; Doc. # 35-3.)

This Court finds that Plaintiffs have stated with particularity the misleading statements that AE allegedly made. Although the first misleading statement is pleaded only on belief, the Plaintiffs provide many other allegations supporting this belief. Specifically, they allege that other shareholders were being permitted to resell their shares and that they were continually frustrated by CST despite legal opinions AE provided to CST allowing other shareholders to receive their stock without restrictive legends. (Doc. # 35, ¶ 30; 50.) Thus, the Court finds that Plaintiffs have alleged with particularity facts that support their belief that AE instructed CST to not reissue Plaintiffs' shares. Similarly, the second misleading statement AE allegedly made is specific.

---

[12] Plaintiffs also alleged that Crone and CST also made numerous misleading statements on AE's instructions. (Doc. # 35, ¶¶ 29, 32, 34-38.) The Court will not address these statements because only AE's statements at are issue.

Although Plaintiffs do not state which officer of AE made the statement to CST, they allege a time period when this statement was made and they quote from the statement. (*Id.,* ¶ 31.)  Finally, Plaintiffs have pleaded the third misleading statement with particularity because they provided the actual letter to the Court.  (Doc. # 35-3.)

The Court must also find that the Plaintiffs have stated, with particularity, why the statements are misleading.  15 U.S.C. § 78u-4(b)(1).  Plaintiffs contend that the first and second statements AE made were misleading because other shareholders were allowed to rely on Rule 144 to sell their shares.  (Doc. # 35, ¶ 30.)  Plaintiffs contend that the second statement was also misleading because whether or not AE was current in the filing of their Form 10-K reports, Plaintiffs were entitled to have their shares reissued without restrictive legend under Rule 144.  (*Id.,* ¶ 31.)  Finally, Plaintiffs contend the last statement is misleading because the letter states that Plaintiffs must give a written representation that Plaintiffs intend to sell their shares, which Plaintiffs claim is not necessary to receive their shares under Rule 144 without a restrictive legend.  (*Id.,* ¶ 40.)  Thus, for the above reasons, the Court finds that Plaintiffs have pleaded AE's misleading statements with particularity.

(ii.)    In Connection With a Sale

The second element a plaintiff must plead to obtain relief in a Rule 10b-5 action is that the defendant's statement was made in connection with a sale of securities. *Adams v. Kinder-Morgan*, 340 F.3d 1083, 1095 (10th Cir. 2003).  The Supreme Court has stated that courts should afford this element a "broad reading."  *SEC v. Zandford*,

535 U.S. 813, 819 (2002).  "[I]t is enough that the fraud alleged 'coincide' with a securities transaction."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006).[13]  The Fourth Circuit, consistent with this guidance, proffered four circumstances in which courts have found that a statement is in connection with a sale of securities.  *SEC v. Pirate Investor LLC*, 580 F.3d 233, 244 (4th Cir. 2009).  One of these circumstances is: "the parties' relationship was such that it would necessarily involve trading in securities."  *Id.*

The Court finds that AE's alleged misleading statements were made in connection with the sale of securities.  First, Plaintiffs state that because the receipt of unrestricted shares is a condition of sale for securities, a request to remove a restrictive legend is made in connection with the sale of a security.  (Doc. # 35, ¶ 27.)  In addition, the parties relationship in this case necessarily involves trading in securities.  *Pirate Investor*, 580 F.3d at 244.  Plaintiffs' brokerage firm contacted AE's stock transfer agent, requesting the removal of a restrictive legend, a condition of the sale of securities. (Doc. # 35, ¶¶ 29, 27.)  This relationship and this request necessarily involves the sale of securities, because the business of a brokerage firm is the sale of securities. Therefore, this Court holds that Plaintiffs have adequately pleaded the second element of a Rule 10b-5 claim.

---

[13] AE cites to *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975), for the proposition that there must be an actual purchase or sale of a security.  However, recent Supreme Court cases have rejected this view and afforded this element a broader construction. *See Dabit*, 547 U.S. at 84 (rejecting *Blue Chip Stamps*' narrow view of this element).

(iii.)     Pleading *Scienter* With Specificity

The third element a plaintiff must plead to obtain relief in a Rule 10b-5 action is that the defendant acted with *scienter*, *i.e.*, the defendant acted with the intent to defraud or recklessness. *Adams v. Kinder-Morgan*, 340 F.3d 1083, 1095 (10th Cir. 2003). A plaintiff must plead with particularity facts that give rise to a strong inference that the defendant acted with *scienter*. 15 U.S.C. § 78u-4(b)(2). A strong inference of *scienter* is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." *Adams*, 340 F.3d at 1105.

In this case, the Court finds that a reasonable person would conclude that AE knew its statements were false. AE allegedly issued conflicting instructions allowing other shareholders to receive their shares without a restrictive legend. (Doc. # 35, ¶ 30.) Per the complaint, AE allegedly knew it allowed other shareholders to receive their shares; it also allegedly knew that it did not allow Plaintiffs to receive their shares without a restrictive legend. Moreover, Plaintiffs allege that AE's motive was to inflate the price of AE's common stock. (*Id.*, ¶¶ 74-75.) Considering the conflicting instructions, a reasonable person would conclude from these alleged facts that AE knew its statements were false or misleading. Therefore, the Court holds that Plaintiffs' complaint satisfies the third element of a Rule 10b-5 claim.

As such, the Court finds that Plaintiffs adequately pleaded all five elements of a Rule 10b-5 claim. Plaintiffs have stated a securities fraud claim against Defendant AE.

4.     <u>Failure to Plead the Elements Required for Injunctive Relief</u>

AE's final argument for dismissal is that Plaintiffs fail to plead the required elements to obtain injunctive relief.  (Doc. # 59 at 8-9.)  There are four elements a plaintiff must prove to obtain injunctive relief: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction is in the public interest.  *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).  In the present case, Plaintiffs have not adequately pleaded the last three elements.[14]  (*See* Doc. # 35, ¶ 77.)  Therefore, the Court holds that Plaintiffs have failed to plead the elements required to obtain injunctive relief.

### III.  CONCLUSION

Based on the foregoing, the Court ORDERS that:

1.     Defendant Crone's Motion to Dismiss is GRANTED pursuant to Rule 12(b)(2).  Accordingly, Defendant Crone is DISMISSED from this case, and Plaintiffs' claim against Defendant Crone for violation of Rule 10b-5 (count IV) is DISMISSED WITHOUT PREJUDICE;

2.     Defendant AE's Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows:

---

[14]  Plaintiffs state that all shareholders were holding AE stock at artificially inflated prices, which caused damages for all shareholders "for which there is no adequate remedy at law." (Doc. # 35, ¶ 77.)  This assertion does not adequately demonstrate that there is irreparable harm.  To the contrary, it appears from these pleadings that damages would be adequate compensation for injured shareholders.

- Because they are preempted by the UCC, Plaintiffs' claims for breach of fiduciary duty (count II) and conversion (count III) are DISMISSED WITH PREJUDICE;

- Because Plaintiffs fail to plead the elements required for injunctive relief, Plaintiffs' claim for injunctive relief (count V) is DISMISSED WITHOUT PREJUDICE.

- Plaintiffs' claims for breach of Colo. Rev. Stat. § 4-8-401 (count I) and violation of Rule 10b-5 (count IV) remain against Defendants AE and CST.

DATED:  July __23__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge